26. <u>Governing Law and Consent to Jurisdiction</u>.

This Agreement is made in New York and shall be governed by and construed in accordance with the internal substantive laws of the State of New York and, with respect to matters regarding the Trademarks, under the laws of the United States as interpreted by the Federal Courts presiding in New York. The parties hereby designate and consent to the exclusive jurisdiction of the United States District Court for the Southern District of New York, and the courts of the State of New York located in New York County, for the determination of any dispute between them arising under or relating to this Agreement; and further agree that service of process in any action shall be effective if delivered as provided in paragraph 19 hereof.

27. <u>Survival of Provisions</u>.

Following termination of this Agreement, including expiration of Licensee's rights, if any, pursuant to paragraph 11 and 13 hereof, the provisions of this Agreement shall survive to the fullest extent necessary to allow the parties to enforce all of their respective rights and remedies.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

Cyber Champion Internation, Ltd.

By: _____        _____
      Title                                    Carlos Falchi

16

Schedule A

annexed to and made part of Agreement dated as of 31  December 2004 between Cyber Champion International Limited and Carlos Falchi

The Registered United States Trademarks which are owned by Cyber Champion International Limited and which are the subject of said Agreement are

"Carlos Falchi" registration number 1,116,624 and
"Carlos Falchi" registration number 1,477,810

17

# AGREEMENT SIGNED BY CARLOS FALCHI

Agreement made as this 31st day of December 2004 between Cyber Champion International Limited, a corporation organized under the laws of the British Virgin Islands, having its principal address c/o Lazarus & Lazarus, P.C. 240 Madison Avenue, New York, N.Y. 10016 ("Licensor") and Carlos Falchi, an individual, having his principal office at 260 West 39th Street, New York, NY 10018 ("Licensee").

WITNESSETH:

Whereas Licensor is the owner of certain registered trademarks in the United States as listed in Schedule A annexed hereto and made a part hereof, (the "Trademarks"), and

Whereas Licensor and Licensee have been engaged in litigation in the United States District Court for the Southern District of New York (Index No.: 02Civ8072CJSR) concerning the validity and ownership of the Trademarks, and

Whereas the parties are willing to resolve their dispute by Licensee acknowledging the validity of the Trademarks and their ownership by Licensor in exchange for a license from Licensor to use the Trademarks on and subject to the terms set forth herein.

Whereas, Licensee recognizes the great value and goodwill associated with the Trademarks and that all rights to the Trademarks and the associated goodwill belong exclusively to Licensor.

Whereas Licensee relinquishes and surrenders such "attribution" rights as he may have had, if any, to use the Trademarks.

Now, therefore, in consideration of the mutual promises, covenants and conditions of the parties hereinafter set forth it is agreed as follows:

1. Definitions:
As used herein the following words shall have the following meanings:

1.01 Affiliate:
"Affiliate" when used in connection with Licensee shall mean business entities, whether corporations, partnerships, joint ventures or otherwise, that now, or hereafter, control, or are owned or controlled, directly or indirectly by Licensee, or are under common control with Licensee.

1.02 Licensed Products:
Handbags, pocketbooks, purses, briefcase-type portfolios, key cases, wallets, attache cases, tote bags, and luggage as set forth in Trademark Registration 1,116,624 and shoes (including sandals, boots or other footwear) ("Shoes") as set forth in Trademark Registration 1,477,810, provided, however, that Licensed Products shall not include Shoes with respect to which the full retail price, before markdowns, discounts, or allowances, is less than, intended to be less than, or known, by Licensee or Affiliate, to be less than $150 ("Excluded Shoe") except that upon request in writing from Licensee to Licensor, Licensee may request permission to include as a Licensed Product, an Excluded Shoe, for example a sandal, which permission shall not be unreasonably withheld or delayed by Licensor. If permitted, Licensor's consent to Licensee's manufacture of an Excluded Shoe shall be evidenced in a writing signed by Licensor. Failure of Licensee to obtain such signed written consent shall be an unwaivable and absolute bar to Licensee or an Affiliate's production of an Excluded Shoe. Shoes, and Excluded Shoes with respect to which Licensor has granted Licensee permission to manufacture pursuant to this License Agreement ("Allowed Excluded Shoes"), may not be manufactured in any



country, territory or principality in Asia absent the express written consent of Licensor, which Licensor may provide or not provide in its sole, unilateral and absolute discretion. Licensee may request that Licensor produce Shoes and Allowed Excluded Shoes for Licensee in Asia, but Licensor may in its sole and absolute and unilateral discretion deny such request; a failure by Licensor to respond to such request shall, under no circumstances operate as Licensor's consent to such manufacture; Failure of Licensee to obtain such signed written consent shall be an unwaivable and an absolute bar to Licensee's production of Shoes or Allowed Excluded Shoes in Asia.

1.03 Additional Products:
All products other than Shoes set forth in Trademark Registration 1,477,810.

1.04 Territory:
The United States.

1.05 Contract Period:
The period commencing as of the date of this Agreement and ending on June 30, 2008 (the "Initial Term"). Should Licensee exercise the option to renew set forth in paragraph 9.01 the Agreement will continue for a two (2) year period ending June 30, 2010 (the "First Renewal Term") and should Licensor exercise the option to further renew set forth in paragraph 9.02 the Agreement will continue further for a four (4) year period ending June 30, 2014 (the "Second Renewal Term").

1.06 Expiration Date:
The last day of the Contract Period.

1.07 Contract Year:
Initially the period commencing as of the date of this Agreement and ending June 30,2006 (the "First Contract Year") and thereafter each successive twelve month period ending on June 30 during the Contract Period.

1.08 Contract Quarter:
Initially the period commencing on the date hereof and ending June 30, 2005 and thereafter each successive three month period during the Contract Period.

2. Grant of Rights:

2.01 Licensor hereby grants to Licensee and Licensee hereby accepts the exclusive right and license to use the Trademarks in the Territory during the Contract Period in connection with the manufacture, advertisement, promotion and sale of Licensed Products.

2.02 Licensor hereby appoints Licensee as its exclusive licensing agent to develop and arrange for utilization of the Trademarks on Additional Products. All activities for the use of the Trademarks on Additional Products shall be conducted solely through Licensee. Should Licensor receive any approach from third parties wishing to acquire rights under the Trademarks for Additional Products it will turn such approaches over to Licensee for such action as Licensee deems appropriate.

When Licensee has a proposal for itself or a third party undertaking to utilize the Trademarks on Additional Products which it wishes to have accepted it will advise Licensor in writing of the terms of such proposal including any revenue to be derived by Licensee for services there under. Licensor may reject such a proposal if it has a reasonable basis for doing so. For the avoidance of doubt Licensor may decline on the



ground that there is an unreasonable disparity between the amounts paid to Licensee for services and the royalties to be paid under such proposal. If Licensor does not reject such proposal it will issue a license to the party named in said proposal which license will incorporate the terms of said proposal and such other terms as are reasonable and customary in licenses of this type.

Such a license shall provide that Licensee shall act as the exclusive agent of Licensor in administering said license but if the such license is granted to a third party Licensee shall not be responsible in any way to Licensor for any breach of said license by such third party including without limitation the failure of said third party to pay any amounts due under such license.

Licensee and Affiliates shall at all times have an absolute and unconditional duty to disclose to Licensor any and all compensation to be received or proposed to be received by Licensee or Affiliate from a licensee of Additional Product, whether such compensation is received directly or indirectly, by Licensee, or Affiliate or by any person, firm, business or organization in which Licensee, o r Affiliate, directly or indirectly has a controlling interest. In the event that a licensee for Additional Product subsequent to the grant of a license for Additional Product engages, or proposes to engage the services of Licensee or Affiliate, directly or indirectly, Licensee shall, pursuant to the terms hereof, disclose any compensation in connection therewith. If the compensation to be received is of a magnitude such that had the compensation been proposed at the inception of the license, Licensor would have had a reasonable basis to reject such license, Licensee or Affiliate may not accept the engagement without the express written consent of Licensor. In such circumstances, Licensor may condition its consent to Licensee's engagement by such licensee on an apportionment of moneys to be received in connection therewith, or by way of an adjustment in the moneys due Licensee in connection with such License.

Notwithstanding anything in this subparagraph to the contrary   , Licensee and Af filiates understand, acknowledge and agree that with respect to any license granted or proposed pursuant to this subparagraph: a) only Licensor may issue the license pursuant to this subparagraph and that any license granted or purported to be granted by Licensee pursuant to this subparagraph shall be void, and of no force or effect; and b) only Licensor shall have authority to consent to any change, modification, extension,  waiver or, without limitation, any alteration of a license granted pursuant to this paragraph; and c) any and all moneys due pursuant to a license granted pursuant to this subparagraph shall be due and payable exclusively to Licensor.

Licensee and Affiliates warrant and represent that with respect to any and all activities engaged in by Licensee, it shall at all times identify Licensor as the owner of the Trademarks.

Licensee understands, acknowledges and agrees that terms consistent with the items set forth in this subparagraph may, at Licensor's sole, absolute and unilateral discretion be made a part of any license granted by Licensor with respect to Additional Product.

Licensor shall pay to Licensee as soon as received one half of all sums Licensor is paid under any license granted by Licensor with respect to Additional Products and any renewals thereof. No monies shall be due and payable to Licensee pursuant to this subparagraph unless and until the monies with respect to which Licensee has a claim are paid to Licensor.

Licensee may not set off against any sums or claims owed to Licensor under this agreement or otherwise, monies owed to Licensee by Licensor from sums paid by such



licensees of Additional Products. Licensor may not set off monies owed to Licensee on account of sums paid by such licensees against any claim or sum owed by Licensee to Licensor under this agreement or otherwise.

2.03 Reservations:

This License Agreement does not constitute a grant of any rights other than those set forth in paragraph 2.1 above. In particular, Licensee does not grant to Licensee or any Affiliate:

<span style="color:gray">Licensor    HMC</span>

    a.  the right to use any derivative of, or modification to, the Trademarks on any Licensed Products or Additional Products;

    b.  the right to form a business entity whose name includes the Trademarks,

    c.  An assignment of any right, title or interest in or to the Trademarks except to an Affiliate as hereinafter provided, or

    d.  The right to grant sublicenses of the rights granted herein except to an Affiliate hereinafter provided.

For the avoidance of doubt Licensee may use the words "Carlos Falchi" or any derivative or modification thereof as a trademark or otherwise in connection with any goods or services not included in Licensor's U.S. Trademark registration 1, 116,624 and U.S. Trademark Registration 1,477,810 at any time and without payment or obligation to Licensor.

3.  Quality Control:

All products manufactured by Licensee hereunder shall conform to reasonable quality standards established by Licensor in consultation with Licensee which are appropriate for the Licensed Products. Licensee will comply with such quality standards and will take all reasonable steps to insure its compliance. On Additional Products, Licensee shall act as Licensor's exclusive agent to advise Licensor of the actions being taken to insure that reasonable quality standards set by Licensor in consultation with Licensee are being met

4. Earned Royalty

4.01 In consideration of the rights granted to it under paragraph 2.01 Licensee shall pay to Licensor a royalty equal to five (5%) percent of Net Sales ("Earned Royalty"). Royalties shall accrue on the date Licensed Products are shipped and invoiced. "Net Sales" shall mean the gross amount of sales shipped by or under authority from Licensee of Licensed Products which shall be calculated at the gross amounts invoiced less all sales, use or similar taxes, all trade discounts, returns, bad debts and freight separately stated on the customers invoice.

4.02 At the end of each Contract Quarter of each Contract Year Licensee shall pay the Licensor a sum equal to Earned Royalties payable based on Net Sales made through the last date of such Contract Quarter less any amounts previously paid as Minimum



Royalties under paragraph 5 which are to be applied against Earned Royalties payable for the Contract Year for which such Minimum Royalties are paid. Payment of Earned Royalties shall be made no later than the due date for the statement for the applicable Contract Quarter and shall accompany such statement made pursuant to paragraph 4.03, time of the essence.

4.03 Licensee shall provide Licensor, within thirty (30) days after the end of each Contract Quarter, a complete and accurate statement of its Net Sales of Licensed Products and accrued Earned Royalties for such Contract Quarter, said statement to be certified as accurate by the chief financial officer of Licensee and to include such information and detail as Licensor may form time to time reasonably request. The statement for each fourth Contract Quarter in each Contract Year shall contain all of the foregoing information for such Contract Year as well as a recapitulation of the information for the full Contract Year, with any necessary reconciliation.

4.04 All royalties and other obligations payable to Licensor under this Agreement shall be paid in United States dollars, by check drawn on a bank which is a member of the New York Clearinghouse; provided, however, that Licensor may require the direct wire transfer into its designated bank account of all payments due hereunder, upon fifteen (15) days prior notice to Licensee containing all necessary wire transfer information. Royalties payable on Net Sales made in currencies other than United States dollars, shall be paid in United States dollars converted from such non United States currency at the rate of exchange for current transactions published in the Wall Street Journal on the last day of the Contract Quarter in which such sales are made.

4.05 Interest at the rate of ten percent (10%) per annum (or the highest amount permitted by law, whichever is lower) shall accrue on any amount payable to Licensor hereunder, from and after the date upon which the payment is due until the date of receipt of payment by Licensor. Such charges shall not be in lieu of or otherwise limit any rights of Licensor in the event a payment is not made by Licensee when due.

4.06 The obligation of Licensee to pay royalties hereunder shall not be modified by any claim that Licensee or Affiliate may assert against Licensor. So long as this agreement is in effect Licensee shall not have the right to set-off, compensate or make any deduction from such royalty payments for any reason other than the failure by Licensee to provide the indemnity set forth in paragraph 14.2

5. Minimum Royalties:

5.01 As an advance against Earned Royalties Licensee shall pay to Licensor a sum ("Minimum Royalties") calculated as follows:

a. For the First Contract Year – $37,500



    b. For the Second Contract Year – $50,000

    c. For each subsequent Contract Year of the Initial Term, First Renewal Term (if any) and Second Renewal Term (if any) – $75,000

5.02 Minimum Royalties shall be payable quarterly in advance as follows

    a. For the First Contract Year on July 1, 2005 – $9,375 and on the first day of each subsequent Contract Quarter of the First Contract Year – $9,375.

    b. For the Second Contract Year On the first day of each Calendar Quarter – $12,500.

    c. For the Third and each subsequent Contract Year – $18,750.

5.03 Minimum Royalties payable for any Contract Year shall be an advance against Earned Royalties for that Contract Year only.

5.04 When on the first date of any Contract Quarter in any Contract Year Earned and Minimum Royalties for that Contract Year payable to that date exceed the amount of Minimum Royalties payable for that Contract Year to such date, the excess shall be applied to reduce the Minimum Royalty payment due on that date. For example – If on September 30, 2006 the Earned Royalties and Minimum Royalties payable for the Second Contract Year were to that date $30,000, then the excess of $5,000 ($30,000-$25,000 Minimum Royalties) would be applied against the Minimum Royalty Payment of $12,500 due on October 1, 2006.

6. Books and Records:

6.01 Licensee agrees to keep accurate books of account and records covering all transactions relating to the license being granted herein. Such books and records, or an accurate copy thereof, shall be maintained at Licensee's principal place of business in New York City, NY. Licensor's representatives shall have the right, upon at least five (5) business days prior notice, to examine and/or audit Licensee's books of account and records and all other documents, records and material in the possession or under the control of Licensee, with respect to the subject matter of this Agreement, and to make copies and extracts thereof. In the event that any such examination or audit reveals an underpayment by Licensee, Licensee shall immediately remit payment to Licensor in the amount of such underpayment plus interest at the rate of ten percent (10%) per annum. (or the highest amount permitted by law, whichever is lower) calculated from the date such payment was actually due until the date when payment is received by Licensor. Further, in the event that any such underpayment is greater than three percent (3%) of the amount paid for the Contract Quarters included in such audit, Licensee shall reimburse



Licensor for the actual costs and expenses of such audit. Such charge shall not be in lieu of or otherwise limit any rights of Licensor in the event a payment is not made by Licensee when due.

6.02 All books of account and records of Licensee covering all transactions relating to the license hereunder shall be retained and made available by Licensee for at least two (2) years after the Expiration Date for examination and/or audit by Licensor's representatives.

6.03 Licensor shall keep and maintain books of account and records covering all transactions relating to licenses granted to Additional Products. Such books and records, or an accurate copy thereof, shall be maintained at Licensor's principal place of business. Licensee's representatives shall have the same right to examine and/or audit Licensor's books of account and other records and documents as are given to Licensor with respect to the examination of Licensee's accounts under the provisions of paragraphs 6.01 and 6.02 above. Payment of any deficiency and the cost of the audit shall be similarly governed by the same provisions that are provided in paragraphs 6.01 and 6.02 for the audit by Licensor.

7. Ownership and Use of the Trademark:

7.01 It is understood and agreed and Licensee acknowledges that Licensor is the sole and exclusive owner of all right, title and interest in and to the Trademarks. Licensee acknowledges that the Trademarks, and all rights therein involving without limitation so called "attribution" rights with respect to all products included in Licensor's Trademarks, belong exclusively to Licensor, subject only to Licensee's rights under this Agreement. Licensee agrees that it will not during the contract period or thereafter attack the title or any rights of Licensor in and to, or attack the validity of, the Trademarks granted herein so long as the Trademarks are not abandoned by Licensor or are not declared invalid by the final judgment of a court or the U.S. Trademark Office in an action or proceeding not brought, directly or indirectly, by Licensor or an Affiliate. Licensee shall, during the Contract Period, cooperate with Licensor and execute such documents as Licensor may reasonable request for the purpose of securing, preserving or enforcing Licensor's rights in, to and under the Trademarks.

All use of the Trademarks by or on behalf of Licensee, shall inure to the benefit of Licensor.

7.02 All Licensed Products, and related packaging and promotional materials shall contain appropriate legends, markings and notices as reasonably requested from time to time by Licensor, to give appropriate notice of Licensor's right, title and interest in and to the Trademarks.

8. Infringement of the Trademarks:

Licensee agrees at Licensor's expense, to assist Licensor in all respects in the enforcement of any rights of the Licensor in the Trademarks. Licensee shall notify Licensor in writing of any actual or potential infringements or imitations by third parties which may come to Licensee's attention. Licensor shall take any action reasonably necessary to prevent or halt such actual or potential infringement or imitation. Licensee shall, at Licensor's request, act as sole plaintiff or join with Licensor in such action as Licensor deems appropriate, at Licensor's expense. If Licensor declines to take any such reasonable action, Licensee may do so but at Licensor's expense. The party bearing the expense of such action shall be entitled to the recovery or award resulting from such



action except that any such award relating specifically to damage to the Licensee shall belong to Licensee.

9. Option to Renew:

9.01 If Licensee carries out all of its obligations hereunder, Licensee shall have the option to renew this Agreement for the First Renewal Term beginning July 1, 2008 and ending June 30, 2010.

9.02 If Licensee has exercised said option and has performed all of its obligations hereunder through the First Renewal Term, Licensee shall have the option to renew this Agreement for the Second Renewal Term beginning July 1, 2010 and ending June 30, 2014 provided however if by the end of the First Renewal Term Licensee has not been paid $425,000 in Earned Royalties plus Minimum Royalties hereunder plus any additional amounts Licensee may, at its option contribute to Licensor, it may refuse to allow the exercise of the renewal option by giving written notice to Licensee to that effect no later than June 30, 2010.

9.03 Options shall be exercised by Licensee giving Licensor written notice to that effect no later than sixty (60) days prior to the commencement of the renewal term for which the option is exercised.

9.04 The First and Second Renewal Terms shall be on the same terms and conditions specified for the Initial Term except that the Minimum Royalties shall be as specified in paragraph 5.

9.05 In computing Licensee's compliance with this License Agreement, including without limitation a) whether or not Licensee has paid to Licensor any minimum royalty due hereunder; and b) whether or not Licensee, pursuant to the terms hereof, may exercise its option to renew, Licensee shall receive no credit, and no consideration shall be given to any monies received directly or indirectly by Licensor on account of Additional Product with respect to which Licensee has acted as exclusive licensing agent.

10A Effect of Proceeding in Bankruptcy, etc.

If either party institutes for its protection or is made a defendant in any proceeding under bankruptcy, insolvency, reorganization or receivership law, or if either party is placed in receivership or makes an assignment for benefit of creditors the other party may elect to terminate this Agreement immediately by written notice to the other party without prejudice to any right or remedy the terminating party may have, including, but not limited to, damages for breach to the extent that the same may be recoverable provided however, such right to terminate shall not be effective if such proceeding, receivership or assignment is cancelled or terminated within thirty (30) days after commencement of same.

Rights, Personal. The license and rights granted hereunder are personal to Licensee. No assignee for the benefit of creditors, receiver, trustee in bankruptcy, sheriff or any other officer or court charged with taking over custody of Licensee's assets or business, shall have any right to continue performance of this Agreement or to exploit or in any way use the Trademarks if this Agreement is terminated pursuant to Paragraphs 10A and 10 except as may be required by law.

Trustee in Bankruptcy. Notwithstanding the provisions of Paragraph 10A above, in the event that, pursuant to the applicable bankruptcy law (the "Code"), a trustee in

8



bankruptcy, receiver or other comparable person, of Licensee, or Licensee, as debtor, is permitted to assume this Agreement and does so and, thereafter, desires to assign this Agreement to a third party, which assignment satisfies the requirements of the Code, the trustee or Licensee, as the case may be, shall notify Licensor of same in writing. Said notice shall set forth the name and address of the proposed assignee, the proposed consideration for the assignment and all other relevant details thereof. The giving of such notice shall be deemed to constitute an offer to Licensor to have this Agreement assigned to it or its designee for such consideration, or its equivalent in money, and upon such terms as are specified in the notice. The aforesaid offer may be accepted by Licensor only by written notice given to the trustee or Licensee, as the case may be, within fifteen (15) days after Licensor's receipt of the notice to such party. If Licensor fails to deliver such notice within the said fifteen (15) days, such party may complete the assignment referred to in this notice, but only if such assignment is to the entity named in said notice and for the consideration and upon the terms specified therein. Nothing contained herein shall be deemed to preclude or impair any rights which Licensor may have as a creditor in any bankruptcy proceeding.

## 10. Expiration or Termination:

10.01 Other Rights Unaffected. It is understood and agreed that termination by Licensor on any ground shall be without prejudice to any other remedies which Licensor may have.

10.02 Termination Without right to cure. If any of the following grounds for termination shall occur, this Agreement shall thereupon forthwith terminate and come to an end upon notice from Licensor

    (a) if Licensee institutes proceedings seeking relief under a bankruptcy act or any similar law, or otherwise violates the provisions of Article 9 hereof (and the same is not vacated within thirty days);

    (b) if Licensee transfers substantially all of his property, his shares of stock or, this Agreement except to an Affiliate.

    (c) the indictment or conviction of Licensee, or any Affiliate of any felony, or of any crime which, in the judgment of Licensor, may adversely affect the name, reputation, goodwill or interest of Licensor.

    (d) a judgment or the decision of a court, regulatory officer, agency, or quasi-regulatory agency that results in the permanent suspension or revocation of any permit or license, the possession of which is a prerequisite to the operation of licensee's business or which is required by applicable law and said judgment or decision is not appealed by Licensee.

    (e) the direct or indirect assignment, transfer or sale by Licensee of this Agreement or the license or rights granted hereunder contrary to this agreement to a party other than an Affiliate.

    (f) failure by Licensee or an Affiliate to remain continuously open for business for a period exceeding thirty (30) days.

10. 3 Termination With Right to Cure. If either party breaches any of its obligations under this agreement, other than those specified in paragraph 10.2 above, the other party may



terminate this agreement by giving Notice of Termination to the breaching party. Termination will be come effective automatically unless the breaching party completely cures the breach within fifteen (15) days of the receipt of such Notice. Upon the giving of a valid Notice of Termination twice in any Contract Year, for any reason, Licensee shall no longer thereafter have the right to cure any violation in that Contract Year and termination shall be effective upon the giving of the valid Notice for the third time in such Contract Year. To fully cure its breach, the party in breach must also reimburse the other party for its attorneys' fees incurred in investigating and analyzing the breach and issuing the notice of breach and for any other communication in connection therewith.

10.4 Duties of Licensee. Upon the expiration or termination of this Agreement for any reason Licensee, in addition to any other act required by this License Agreement Licensee will do all of the following except as otherwise provided in paragraph 11:

(a) bring current all accounts with Licensor;

(b) stop using the Trademarks

(c) return to Licensor any materials obtained by Licensee, from or through Licensor

(d) execute and deliver to Licensor any and all documents reasonably required by Licensor regarding the termination of this License Agreement and the Trademarks;

(e) discontinue use of the Trademarks, and anything similar to, or that may be confused with the Trademarks on Licensed Products or Additional Products.

Licensee's duties under this paragraph will survive the expiration or any termination

11. Post Termination and Rights and Obligations After Expiration:

11.01 From and after the Expiration Date or the earlier termination of this Agreement, if applicable, all of the rights of Licensee hereunder to the use of the Trademarks except as hereinafter expressly provided in subparagraph 11.02, shall cease absolutely

11.02 If this Agreement expires on the Expiration Date, any Licensed Products that may have been manufactured or are in the process of being manufactured by Licensee prior to the Expiration Date may be completed and sold by Licensee during the one hundred and twenty (120) day period next following the Expiration Date (the "Sell-off Period") ; provided, however, that Licensee shall have no such rights hereunder unless:

11.02.01 Within thirty (30) business days after the Expiration Date, Licensee shall furnish to Licensor a written statement of the number and description of Licensed Products actually in stock or in the process of production on the Expiration Date; and

11.02.02 Licensee shall not then be in default in payment of Earned Royalty or Minimum Royalty obligations hereunder or of any other provision of this Agreement; and

11.02.03 Licensee shall continue to pay to Licensor with respect to such sales during the



Sell-off Period a royalty at the rate specified herein, and shall otherwise continue to comply with all provisions hereof relating to the manufacture, promotion and distribution of Licensed Products and the use of the Trademark.

11.03 Royalties pursuant to this Paragraph 11 shall be paid within thirty (30) days following the end of the Sell-off Period with respect to shipments made during such Sell-off Period.

11.04 Within thirty (30) days after the end of the Sell-off Period or earlier termination of the Contract Period, as the case may be, Licensee shall deliver to Licensor a statement indicating the number and description of the Licensed Products which it had on hand or in the process of manufacturing as of the Expiration Date or termination date or at the end of the Sell off Period whichever is applicable. Licensee shall dispose of such inventory only after removing the Trademarks there from. Licensor shall have the option of conducting a physical inventory upon at least two (2) days prior notice to Licensee, at any reasonable time in order to ascertain or verify such statement.

11.1 Injunctive Relief. If either party commits a breach or is about to or threatens to commit a breach of any of the provisions of this Agreement, the other party shall have the right to injunctive relief and to have the provisions of this Agreement specifically enforced by any competent court without having to prove the inadequacy of the available remedies at law, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable injury and that money damages will not provide an adequate remedy. In addition, either party may avail itself of all such other actions and remedies available under law or in equity and shall be entitled to such damages as it can show it has sustained by reason of such breach.

11.2 Freedom to license. In the event of expiration or termination of this Agreement Licensor shall be free to license to others the use of the Trademarks

12. Assignment:

12.1 Licensee may not sublicense or assign its rights hereunder without Licensor's prior consent which will not be unreasonably withheld provided however Licensor's consent shall not be required for assignment or sublicense to an Affiliate. Any assignment made hereunder shall not relieve the Licensee from his obligation hereunder and shall be accompanied by an assumption by such assignee of all of the obligations of Licensee hereunder which pertain to the rights being assigned.

12.2 Should Licensor seek to sell, assign, or otherwise dispose of its rights hereunder to a third party it will first offer to Licensor in writing the right to acquire them on the same terms and conditions as are negotiated with said third party. Licensee shall have thirty (30) days in which to accept Licensor's offer. Thereafter if Licensee does not accept such offer Licensor may proceed with such transaction provided the acquiring party assumes in writing all of the obligations of Licensor hereunder. Should the transaction with such third party not be concluded by Licensor, Licensee shall have a similar right of first refusal on any subsequent attempts by Licensor to dispose of its interests in the Trademarks.

13. Rights After Termination:



11

The rights of the Licensee to participate in income derived by Licensor from licenses of Additional Products as more particularly set forth in paragraph 2.02 shall survive and continue after the expiration of this Agreement or its earlier termination for any reason whatsoever. But the termination or expiration of this Agreement shall absolutely and unconditionally terminate Licensee and Affiliates rights pursuant to paragraph 2.02 to act as exclusive licensing for Additional Product, and Licensee or Affiliate shall promptly surrender all materials of or relating to such services, and Licensee or Affiliate shall cooperate with Licensor with respect to such termination.

## 14. Indemnification:

### 14.1 Indemnification by Licensee.

Licensee will indemnify, defend, and hold harmless, Licensor and its directors, officers, employees, agents, officials and related companies from and against any and all losses, liability claims, causes of action, damages and expenses (including reasonable attorneys' fees and expenses in actions involving third parties or between the parties hereto) that they or any of them may incur or be obligated to pay in any action, claim or proceeding against them or any of them, for or by reason of any acts, whether of omission or commission, that may be committed or suffered by Licensee or any of its servants, agents or employees in connection with or in any way related to Licensee's performance of this Agreement, provided, however, that Licensor gives Licensee prompt notice of, and full cooperation in the defense against, such claim. If any action or proceeding is brought or asserted against Licensor in respect of which indemnity may be sought from Licensee under this paragraph, Licensor will promptly notify Licensee thereof in writing, and Licensee will assume and direct the defense thereof. Licensor may thereafter, at its own expense, be represented by its own counsel in such action or proceeding. Licensor and Licensee will keep each other fully advised of all developments and shall cooperate fully with each other and in all respects in connection with any such defense. The provisions of this paragraph and Licensee's obligations hereunder will survive any termination or rescission of this Agreement.

### 14.2 Indemnification by Licensor.

Licensor will indemnify, defend, and hold harmless Licensee, all Affiliates and their directors, officers, employees, agents, officials and related companies from and against any and all liability claims, causes of action, damages and expense (including reasonable attorneys' fees, costs and expenses in actions involving third parties or between the parties hereto) that they or any of them may incur or be obligated to pay in any action or claim or proceeding against Licensee for infringement of any other person's claimed right to use the trademarks in the Territory, but only where such action or claim results from Licensee' use of the Trademarks in the Territory in accordance with the terms of this Agreement or in any action or claim or proceeding against Licensee which arises from any alleged loss or damage to any person or property on account of or arising from the use of any product manufactured or sold by Licensor under the Trademark and Licensee will give Licensor prompt written notice of any such claim or action, and thereupon Licensor will undertake and conduct the defense of any suit so brought. In the event appropriate action is not taken by Licensor within thirty (30) days after its receipt of notice from Licensee, Licensee will have the right to defend such claim or action in its own name at Licensor's cost and expense but no settlement or compromise of any such claim or action may be made without the prior written notice to Licensor. In either case, Licensor and Licensee will keep each other fully advised of all developments and shall cooperate fully with each other and in all respects in connection with any such defense.



**15. Representations and Warranties of Licensor:**

Licensor represents and warrants that

15.01 Licensor has the right power and authority to enter into this agreement and to grant to Licensee the rights and licenses granted hereby;

15.02 Licensor is duly organized and existing corporation in good standing under the laws of the country in which it is incorporated.

15.03 The performance by Licensor of any of the terms and conditions of this Agreement on its part to be performed will not constitute a breach or violation of any judgment, decree or order or any agreement or understanding, written or oral, to which it is a party or by which it may be bound.

15.04 Licensor has not granted any rights in or under the Trademarks to any third party.

**16. Representations and Warranties of Licensee:**

Licensee represents and warrants that

16.01 The execution and delivery of this Agreement and the performance of the transactions contemplated hereby have been duly authorized by all appropriate action;

16.02 The performance by Licensor of any of the terms and conditions of this Agreement on his part to be performed does not and will not constitute a breach or violation of any judgment, decree or order or any agreement or understanding, written or oral, to which he is a party or by which he is bound.

**17. Confidential Information:**

17.01  Each party shall maintain in confidence all information which may be furnished to it by or on behalf of the other party in connection with this Agreement and which is identified as confidential by such other party at the time such information is so furnished. Each party's commitment hereunder with respect to confidential information of the other party shall not apply to any part of such confidential information of the other party which:

17.01.01 was known to the receiving party prior to disclosure by the other party;

17.01.02 was known or available to the public prior to disclosure by the other party;

17.01.03 becomes known or available to the public subsequent to disclosure by the other party through no wrongful act of the party disclosing or receiving the confidential information. Either party shall be permitted to disclose such confidential information to



the extent required by applicable laws and regulations, or pursuant to a court order.

17.02    Licensee shall take all necessary steps to ensure that use by Licensee or by Licensee's contractors of confidential information (which use shall be solely as necessary for, and in connection with, the manufacture, distribution, sale, advertising or promotion of Licensed Products) shall preserve in all respects such confidentiality and secrecy.

18. Relationship of Parties.

Nothing herein contained shall create any association, partnership, joint venture, between the parties hereto, and neither party shall have authority to bind the other or the other's representatives in any way except that the actions taken by Licensee as agent of Licensor with respect to Additional Products when taken in accordance with paragraphs 2.02 and 3.00 shall be binding upon Licensor.

19. Notices.

Any notice under this Agreement, including any statement required to be delivered by Licensee to Licensor, or approval requested of Licensor, must be in writing and shall be considered given when delivered personally or when received by certified or registered mail, postage prepaid or sent by confirmed fax to the party for which intended, in each event at the following addresses or fax numbers (or at such address or numbers as either party may specify by notice to the other hereunder):

    To Licensor: Cyber Champion International, Ltd.
                 c/o Lazarus & Lazarus, P.C.
                 240 Madison Avenue
                 New York, N.Y. 10016
                 Fax: 212 684 0314
    To Licensee: Carlos Falchi
                 260 West 39th Street
                 New York, NY 10018
                 Fax: 212 921 291 2955

20. Modification; Waiver; Remedies Not Exclusive.

    No waiver of any performance obligation or of any default, breach or violation of any obligations shall be considered a continuing waiver or a waiver of any other or subsequent performance obligation, default, breach or violation. No delay or omission in enforcing any right or pursuing any remedy provided herein shall be construed as a waiver of such right or remedy. Any waiver of any provision of this Agreement must be in writing and signed by the party or parties making such a waiver. No enforcement of any right or pursuit of any remedy shall be deemed an election of remedies or be held to

14



exhaust any such right or remedy, and every such right may be enforced and every such remedy may be pursued from time to time.

### 21. Agents and Brokers.

Licensee and Licensor represent to each other and agree that there have not been and there are no agents or brokers involved in bringing about this Agreement or in the negotiation thereof.

### 22. Binding Agreement.

This Agreement shall be binding upon and inure to the benefit of Licensee and Licensor and their respective legal representatives, successors and permitted assigns.

### 23. Entire Agreement.

This Agreement, together with the schedule hereto and stipulations and releases executed in connection with the settlement of litigation pending between the parties constitute the sole and entire agreement between Licensor and Licensee with respect to the subject matter hereof and supersedes all other or prior agreements except as otherwise expressly set forth herein. There are and have been no representations or agreements except as herein set forth. This Agreement may not be amended, discharged or terminated orally; any amendment, discharge or termination, and any waive, consent, approval or designation (except as otherwise provided in this Agreement) must be in writing, duly executed by the party against which enforcement is sought.

### 24. Severability of Provisions.

If any provision of this Agreement or the application thereof to any person or circumstance shall to any extent be held invalid or unenforceable, in whole or in part, the remainder of this Agreement, or such provision, or the application thereof to persons or circumstances other than those as to which it is held to be invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and enforceable to the fullest extent permitted by law.

### 25. Paragraph Headings.

The headings of the paragraphs herein are for the convenience of the parties only and are not to be considered part of this Agreement in construing the same.



26. Governing Law and Consent to Jurisdiction.

This Agreement is made in New York and shall be governed by and construed in accordance with the internal substantive laws of the State of New York and, with respect to matters regarding the Trademarks, under the laws of the United States as interpreted by the Federal Courts presiding in New York. The parties hereby designate and consent to the exclusive jurisdiction of the United States District Court for the Southern District of New York, and the courts of the State of New York located in New York County, for the determination of any dispute between them arising under or relating to this Agreement, and further agree that service of process in any action shall be effective if delivered as provided in paragraph 19 hereof.

27. Survival of Provisions.

Following termination of this Agreement, including expiration of Licensee's rights, if any, pursuant to paragraph 11 and 13 hereof, the provisions of this Agreement shall survive to the fullest extent necessary to allow the parties to enforce all of their respective rights and remedies.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first above written.

Cyber Champion International, Ltd.

By:_____
        Title

                                          Carlos Falchi

Schedule A

annexed to and made part of Agreement dated as of 31 December 2004 between Cyber Champion International Limited and Carlos Falchi

The Registered United States Trademarks which are owned by Cyber Champion International Limited and which are the subject of said Agreement are

"Carlos Falchi" registration number 1,116,624 and
"Carlos Falchi" registration number 1,477,810



17

UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

CARLOS FALCHI

                              Plaintiff,

        -against-

CYBER CHAMPION INTERNATIONAL,
LTD.,
A British Virgin Islands Corporation

                              Defendant.
--------------------------------------------------------------X

Index No.: 02 CV 8072

Judge Richard J. Holwell

Magistrate Judge Theodore H. Katz

## STIPULATION OF DISCONTINUANCE

LAZARUS & LAZARUS, P.C.
*Attorneys for Defendant Cyber Champion International, Ltd.*
240 Madison Avenue, 8th Floor
New York, New York 10016
(212) 889-7400

To

Attorney(s) for

Service of a copy of the within is hereby admitted.

Dated:_____    _____